UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

| | | |
|---|---|---|
| ERDMAN COMPANY; and ERDMAN ARCHITECTURE & ENGINEERING COMPANY | | PLAINTIFFS |
| VS. | CASE NO. 2:10-CV-2045 *Lead case* | |
| PHOENIX LAND & ACQUISITION, LLC; PHOENIX HEALTH, LLC | | DEFENDANTS |
| ERDMAN COMPANY; and ERDMAN ARCHITECTURE & ENGINEERING COMPANY | | THIRD PARTY PLAINTIFFS |
| VS. | | |
| DATA TESTING, INC.; OTIS ELEVATOR COMPANY; and | | THIRD PARTY DEFENDANTS |

---

| | | |
|---|---|---|
| PHOENIX HEALTH, LLC; and IPF, LLC | | CONSOLIDATED PLAINTIFFS |
| VS. | CASE NO. 2:11-CV-2067 *Member Case* | |
| ERDMAN ARCHITECTURE & ENGINEERING COMPANY; and OTIS ELEVATOR COMPANY | | CONSOLIDATED DEFENDANTS |

**ORDER**

Before the Court is Erdman Company and Erdman Architecture & Engineering Company's (together, "Erdman") Motion for Partial Summary Judgment (Integration and Merger Clauses). (ECF No. 192). The Phoenix entities have responded (ECF No. 213), and Erdman has

replied. (ECF No. 241). The matter is ripe for the Court's consideration. For the following reasons, the motion will be granted.

## BACKGROUND

The instant motion concerns the effect of the merger clause in the design-build contract between Erdman and Phoenix. The contract covered the building of a hospital addition in Fort Smith; Erdman was the contractor, Phoenix was the owner.

Before the parties contracted to build the hospital addition—a multi-million-dollar undertaking—they entered into a project development agreement ("PDA"). The PDA was a two-step agreement. Step one was a project analysis. There, Erdman would basically work out the project details, getting Phoenix's input along the way. Project-analysis tasks included establishing "preliminary financial and ownership objectives for the project," preparing "a conceptual building and site design," assisting "the Owner to develop a comprehensive project development budget," preparing a "detailed schedule," and condensing all of those findings into a report. The project-analysis step would cost $25,000—half due at signing and half due when the report issued. (ECF No. 198-22).

Step two was a project design. Once Phoenix approved the project analysis and gave the go-ahead for Erdman to proceed with the project design, Erdman would work out any issues and fill in any information needed to prepare a full design-build contract for the project. Project-design tasks included making detailed plans, preparing "contract specifications identifying materials, mechanical systems, and suppliers," and finalizing the project budget. (ECF No. 198-22, at 3). The project-design step would cost 4% of the total project cost estimated in the project analysis. In this case, that 4% came to between $600,000 and $700,000 dollars; it was payable in three installments.

The PDA was explicitly "preliminary to preparation of contact documents"; it was not, in other words, an agreement actually to make the final design-build contract. However, if Phoenix and Erdman did end up taking the next step and entering into a final design-build contract, all the costs Phoenix paid for the PDA would be credited against the final project price.

Phoenix and Erdman did end up executing a design-build contract. However, things later broke down, and Phoenix sued Erdman for various causes of action premised on "the Project Development Agreement and Contract." (ECF No. 141, at 9).[1]

Erdman now moves for summary judgment on all of Phoenix's claims premised on the PDA, arguing that the PDA merged with the design-build contract and at that point ceased to legally exist. Erdman bases that argument on the design-build contract's merger clause. That clause reads:

> 14.12  <u>Extent of Contract</u>
>
> This contract is solely for the benefit of the parties, represents the entire and integrated agreement between the parties, and supercedes all prior negotiations, representations or agreements, either written or oral, between the parties.

(ECF No. 198-1, at 32).

The Court agrees with Erdman that the PDA merged into the design-build contract and is thus not an independent basis for any claims in this case.[2]

## STANDARD OF REVIEW

The standard of review for summary judgment is well established. The Federal Rules of Civil Procedure provide that when a party moves for summary judgment:

---

[1] Only one of Phoenix's claims references the PDA apart from the contract. (ECF No. 141, at 13).
[2] Though the parties discuss the parole-evidence rule, it seems to the Court that Phoenix is not trying to use the PDA to interpret the design-build contract, but rather to establish an independent basis of liability.

3

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a); *Krenik v. County of LeSueur*, 47 F.3d 953 (8th Cir. 1995). The Supreme Court has issued the following guidelines for trial courts to determine whether this standard has been satisfied:

> The inquiry performed is the threshold inquiry of determining whether there is a need for trial—whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). *See also Agristar Leasing v. Farrow*, 826 F.2d 732 (8th Cir. 1987); *Niagara of Wisconsin Paper Corp. v. Paper Indus. Union-Mgmt. Pension Fund*, 800 F.2d 742, 746 (8th Cir. 1986). A fact is material only when its resolution affects the outcome of the case. *Anderson*, 477 U.S. at 248. A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *Id*. at 252.

The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enterprise Bank v. Magna Bank*, 92 F.3d 743, 747 (8th Cir. 1996). The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Id*. The nonmoving party must then demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik*, 47 F.3d at 957. A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial. *Anderson*, 477 U.S. at 256.

## DISCUSSION

At the outset, the Court is unclear on how exactly Phoenix plans to use the PDA to establish liability in this case; the counts in the counterclaim are not specific enough to give the

answer. Nevertheless, because the effect of the contract's merger clause on the PDA is a question of law, and because Phoenix has relied on the PDA in making its claims, the Court will answer the question raised in Erdman's motion.

    I.    **Contract interpretation**

Any analysis of the merger clause's effect must obviously begin with the merger clause itself. If that clause is unambiguous, then its interpretation is a question of law the Court may answer. *Artman v. Hoy*, 370 Ark. 131, 136, 257 S.W.3d 864, 869 (Ark. 2007). Moreover, the preliminary question whether the clause is ambiguous at all is also a question of law the Court may answer. *Fryer v. Boyett*, 64 Ark. App. 7, 11, 978 S.W.2d 304, 306 (Ark. Ct. App. 1998).

In deciding whether a contract is ambiguous, three rules have become standard, under which the Court should: (1) give the contract language the meaning the parties intended; (2) give the words used their plain and ordinary meaning; and (3) read the contract's parts harmoniously together. *First Nat'l Bank of Crossett v. Griffin*, 310 Ark. 164, 169–70, 832 S.W.2d 816, 819 (Ark. 1992) (citing cases). Particularly with the first rule, the Court "must…look to the contract as a whole and the circumstances surrounding its execution to determine the intention of the parties." *Id.*

Ambiguity or the lack of it, then, does not exist in a vacuum. For the Court to declare a contract unambiguous merely means that the contract is unambiguous between the parties in the context in which it was written—that nothing more than the contract is needed to determine its meaning. *See C & A Constr. Co. v. Benning Contr. Co.*, 256 Ark. 621, 622, 509 S.W.2d 302, 303 (Ark. 1974) ("When, on its face, the reader can tell that something must be added to the written contract to determine the parties' intent, the ambiguity is patent; a latent ambiguity arises from undisclosed facts or uncertainties of the written instrument."); *see also Surgical Synergies, Inc. v.*

*Genesee Assocs., Inc.*, 432 F.3d 870, 874 (8th Cir. 2005) (applying Texas law) ("The court decides whether a contract is ambiguous as a question of law, 'looking at the contract as a whole in light of the circumstances present when the parties entered the contract.'" (quoting *Friendswood Dev. Co. v. McDade & Co.*, 926 S.W.2d 280, 282 (Tex. 1996))).

The merger clause in this case is unambiguous: the design-build contract "supercedes all prior negotiations, representations or agreements, either written or oral, between the parties." (ECF No. 198-1, at 32). Any prior negotiations about the project, any prior representations about the project, any prior agreements about the project are superceded by the design-build contract. The contract is, in other words, "the entire and integrated agreement between the parties." (ECF No. 198-1, at 32). If either party takes issue with the other's performance, it need not go, and cannot go, beyond the contract. The parties' agreement is contained in the contract, and in nothing else.

The merger clause being unambiguous, the Court may interpret it as a matter of law.

## II.     Whether the PDA is covered by the merger clause

Erdman argues that the PDA is a prior negotiation, representation, or agreement that merged into the final design-build contract and was thus extinguished. *McNamara v. Bohn*, 69 Ark. App. 337, 343, 13 S.W.3d 185, 188 (Ark. Ct. App. 2000). To that argument, Phoenix makes two responses: (1) the PDA was a separate, stand-alone agreement that began and ended before the design-build contract came to be; and (2) merger is a question of intent derived from all the circumstances, which raises a fact questions and makes summary judgment inappropriate.[3]

---

[3] Phoenix also argues, citing *City of Texarkana, Ark. v. City of Texarkana, Tex.*, No. 4:10-CV-04067, 2012 WL 2681802, at 3 (W.D. Ark. July 6, 2012), that course-of-dealing evidence is admissible to explain or supplement a contract and may become part of the contract. The *City of Texarkana* case, however, is an unpublished case that applies Arkansas's UCC course-of-dealing rule to a non-UCC contract, something the Arkansas Supreme Court has never done. *See Bank of Am., N.A. v. C.D. Smith Motor Co.*, 353 Ark. 228, 238, 106 S.W.3d 425, 429 (Ark. 2003) (finding two previous non-UCC cases inapplicable to the instant UCC case); *see also L.F. Brands Mktg., Inc. v. Dillard's, Inc.*, 2009 Ark. App. 174, at 6, 314 S.W.3d 736, 739 (following *Bank of Am.* in distinguishing UCC from

6

    a.    **Whether merger presents a fact question**

Phoenix's second argument is the more fundamental of the two and may be addressed first. Phoenix's argument, based on a single case, is essentially that merger clauses are intent-dependent and are therefore per se ambiguous and raise fact questions. That is not the law.

The case on which Phoenix relies, *Simpson v. Braden*, 2011 Ark. App. 250, at 4, states that "intention is a prerequisite for merger and the trial court will use a totality-of-the-circumstances approach to determine the parties' intention." In stating intention as a requirement for merger, *Simpson* cites *Farm Bureau Pol'y Holders v. Farm Bureau Mut. Ins. Co.*, 335 Ark. 285, 296, 984 S.W.2d 6, 12 (Ark. 1998). The intent language in the *Farm Bureau* case is a direct quotation from a Texas case, which the *Farm Bureau* court cited for the proposition that merger applies only when the parties to the early and late agreements are the same. *Id.*

The intention language in *Farm Bureau*, in other words, was not part of the *Farm Bureau* holding, and thus is not normative in ordinary merger-clause cases like this one. Moreover, neither of the cases *Simpson* cites for the point that a totality-of-the-circumstances approach is required actually require that approach. Finally and more broadly, it makes little sense to have one rule holding that an unambiguous contract may be interpreted as a matter of law, *Artman v. Hoy*, 370 Ark. 131, 136, 257 S.W.3d 864, 869 (Ark. 2007), and another holding that merger clauses are uniquely always dependent on fact questions.

Phoenix's second argument is therefore unsuccessful.

    b.    **Whether the PDA was a stand-alone, independent agreement**

Phoenix also argues that the PDA was a stand-alone, independent agreement that ended before the design-build contract began and therefore could not have merged with it. Erdman

---

non-UCC cases in considering course-of-dealing evidence). As far as the Court can tell, the Arkansas Supreme Court has not adopted a course-of-dealing exception to the parole-evidence rule in non-UCC cases. The Court therefore will not apply such an exception in this case.

argues that the PDA was a precursor to the design-build contract and therefore was a "prior negotiation[], representation[] or agreement[]" about the project, and therefore merged with the design-build contract.

It is true that in some circumstances two separate agreements may be too separate to merge. *Farm Bureau*, 335 Ark. at 296, 984 S.W.2d at 12. The PDA is not one of those agreements; it was plainly preparatory to the design-build contract.

The main PDA language in Phoenix's favor is the PDA's statement that "Project Construction will be covered by a separate Design-Build Contract presented at the conclusion of the work under this agreement." (ECF No. 198-22, at 1). Apart from that, the PDA is full of statements that make it a negotiation and agreement about the project. Some of the tasks done under the PDA were:

- "[m]eet with owner to identify the goals for the project";
- "discuss preliminary financial and ownership objectives for the project";
- "prepare conceptual outline specifications identifying building materials and systems";
- "[p]repare a conceptual construction budget…";
- "[a]ssist the Owner to develop a comprehensive project development budget";
- "[p]repare a detailed schedule that identifies significant activities and milestones from analysis through project completion";
- "develop the project to the level required to prepare a Design-Build Contract for Project Construction."
- "prepare a guaranteed price Design-Build Contract for Project Construction."

(ECF No. 198-22, at 1-5).

The PDA was explicitly not a contract to enter into a design-build contract; in that sense, it was a preliminary, separate agreement. (ECF No. 198-22, at 3). The PDA also entailed a

separate cost: $25,000 for the project-analysis phase; 4% of total project cost for the project-design phase. However, if Phoenix did decide to sign a design-build contract with Erdman, all the costs it paid for the PDA would be wrapped into the final project cost.

Putting all this together, it is apparent that the PDA was a prior written negotiation and agreement about the project that merged into the final design-build contract. If the parties decided not to enter into the design-build contract, Phoenix would have to pay Erdman for the PDA, and either party could presumably sue on it as a contract. If the parties did decide to enter into the final design-build contract, however, then all of the PDA work and costs merged into the design-build contract and the PDA ceased to exist as a separate agreement.

In sum, the PDA covered the resolution of numerous—and possibly all—aspects of what went into the design-build contract, and was credited to its costs. The PDA was thus covered by the merger clause in the design-build contract and therefore extinguished by it. Accordingly, Phoenix may not rely on the PDA to establish Erdman's liability in this case.

## CONCLUSION

For the above reasons, the Court finds that Erdman's Motion for Partial Summary Judgment (Integration and Merger clauses) (ECF No. 192) should be and hereby is **GRANTED**. Phoenix may not rely on the PDA to establish Erdman's liability in this case.

IT IS SO ORDERED, this 17th day of July, 2013.

/s/ Susan O. Hickey
Susan O. Hickey
United States District Judge