UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

| | | |
|---|---|---|
| ERDMAN COMPANY; and ERDMAN ARCHITECTURE & ENGINEERING COMPANY | | PLAINTIFFS |
| VS. | CASE NO. 2:10-CV-2045<br>*Lead case* | |
| PHOENIX LAND & ACQUISITION, LLC; PHOENIX HEALTH, LLC | | DEFENDANTS |
| ERDMAN COMPANY; and ERDMAN ARCHITECTURE & ENGINEERING COMPANY | | THIRD PARTY PLAINTIFFS |
| VS. | | |
| DATA TESTING, INC.; OTIS ELEVATOR COMPANY; and | | THIRD PARTY DEFENDANTS |

---

| | | |
|---|---|---|
| PHOENIX HEALTH, LLC; and IPF, LLC | | CONSOLIDATED PLAINTIFFS |
| VS. | CASE NO. 2:11-CV-2067<br>*Member Case* | |
| ERDMAN ARCHITECTURE & ENGINEERING COMPANY; and OTIS ELEVATOR COMPANY | | CONSOLIDATED DEFENDANTS |

**ORDER**

Before the Court are Motions for Partial Summary Judgment filed by Otis Elevator Company ("Otis") and Erdman Company and Erdman Architecture & Engineering Company (collectively, "Erdman"). (ECF Nos. 167 & 177). Erdman and Otis have responded and replied

to one another's motions. (ECF Nos. 220, 226, 240 & 245). The matters are ripe for the Court's consideration. For the following reasons, both motions will be denied.

## BACKGROUND

The instant dispute arises out of a larger construction case in which the design–builder, Erdman, sued the buyer, Phoenix Land and Acquisition, to enforce several liens on a hospital addition in Fort Smith following non-payment. The non-payment arose from problems on the project—namely, an elevator installation gone wrong—and a dispute about who was responsible. After Erdman filed suit in March 2010, Phoenix counterclaimed, and Erdman filed a third-party complaint seeking indemnity from Otis, the company responsible for installing the elevator. Erdman's amended third-party complaint, filed October 29, 2012, seeks to enforce an indemnity provision contained in an alleged subcontract between Erdman and Otis. Otis now moves for summary judgment on Erdman's indemnity claim, arguing that it never accepted Erdman's subcontract in the first place. Erdman also moves for summary judgment on its indemnity claim, arguing that Otis accepted and breached the subcontract.

The events surrounding the contract dispute are as follows. Jim Dresen and James Anderson, from Erdman and Otis, respectively, began corresponding via email in mid-June 2008 about a bid for elevator work on the project. Dresen and Anderson worked out the details and Otis provided Erdman a nine-page estimate on June 19, 2008.[1] Erdman placed an order for the elevator on July 7, 2008, in the form of a subcontract cresting fifty pages. Erdman supplied the form, which stated Otis's quoted price of $141,800.

Buried in that subcontract at Section 13.1 is the expansive indemnity clause giving rise to this dispute. That clause purports to obligate Otis to indemnify Erdman for damages arising from injuries to person or property caused by Otis's—or its agents' or sub-subcontractors'—

---

[1] The estimate is also dated June 10, 2008, but that date pre-dates the parties' discussions. (ECF No. 167-4, at 1).

negligence. Section 16.1 describes Otis's insurance obligations. Section 27 describes Otis's obligation to pass the subcontract's insurance and indemnity provisions on to Otis's sub-subcontractors.

On July 10, 2008, three days after receiving Erdman's subcontract, Otis began installing the elevators. Otis subcontracted the required drilling work to Long's Drilling, which drilled into an abandoned coal mine.[2] Eleven days later, on July 21, 2008, Reed Myers, an Otis employee, signed and returned the Erdman subcontract. Otis's acceptance of the subcontract was explicitly conditioned on the terms of Otis's acknowledgement letter, included with Otis's acceptance. Otis relies on one of those terms in seeking summary judgment: that Otis will indemnify Erdman only for the negligence of Otis, its agents, and its subcontractors, and that each party shall defend itself in any lawsuit. (ECF No. 167-7, at 2).

Otis argues that its alleged acceptance was really a counter-offer that destroyed the Erdman subcontract and that, while the counter-offer did not itself become a contract, the parties' course of performance stepped in to impose contract terms. The parties' course of performance, according to Otis, either (1) imposes Otis's insurance and indemnity terms (which Otis contends it did not violate); or (2) failed to supply insurance and indemnity terms at all, in which case Otis could not have violated them because they did not exist.

Thus, both pending motions turn on two questions: (1) what insurance and indemnity terms apply; and (2) did Otis breach the applicable terms? The Court will take each question in turn.

**STANDARD OF REVIEW**

The standard of review for summary judgment is well established. The Federal Rules of Civil Procedure provide that when a party moves for summary judgment:

---

[2] All claims against Long's Drilling have been dismissed. (ECF Nos. 209 & 221).

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a); *Krenik v. County of LeSueur*, 47 F.3d 953 (8th Cir. 1995). The Supreme Court has issued the following guidelines for trial courts to determine whether this standard has been satisfied:

> The inquiry performed is the threshold inquiry of determining whether there is a need for trial—whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). *See also Agristar Leasing v. Farrow*, 826 F.2d 732 (8th Cir. 1987); *Niagara of Wisconsin Paper Corp. v. Paper Indus. Union-Mgmt. Pension Fund*, 800 F.2d 742, 746 (8th Cir. 1986). A fact is material only when its resolution affects the outcome of the case. *Anderson*, 477 U.S. at 248. A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *Id*. at 252.

The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enterprise Bank v. Magna Bank*, 92 F.3d 743, 747 (8th Cir. 1996). The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Id*. The nonmoving party must then demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik*, 47 F.3d at 957. A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial. *Anderson*, 477 U.S. at 256.

## DISCUSSION

### I. What insurance and indemnity terms apply?

The first question to be answered is what insurance and indemnity terms apply. "[T]he determination of whether a given set of writings constitutes a valid contract is a question of law to be determined by the Court." *Banner Iron Works, Inc. v. Amax Zinc Co.*, 621 F.2d 883, 886 (8th Cir. 1980). Otis claims—and Erdman does not dispute—that the contract scenario in this case is governed by the Uniform Commercial Code ("UCC"), codified at ARK. CODE ANN. §§ 4-2-101–725. The Court agrees. The UCC governs sales of goods, *TB of Blytheville, Inc. v. Little Rock Sign & Emblem, Inc.*, 328 Ark. 688, 694, 946 S.W.2d 930, 932 (Ark. 1997), and even though the contract in this case involves the sale *and* the installation of elevators, the contract is "fundamentally one for the sale of goods, and the UCC governs." *B&B Hardware, Inc. v. Fastenal Co.*, 688 F.3d 917, 921 (8th Cir. 2012).

The parties agree that Erdman's purchase order was a subcontract offer. *Stewart-Decatur Sec. Sys., Inc. v. Von Weise Gear Co.*, 517 F.2d 1136, 1139 (8th Cir. 1975). The fundamental issue is whether Otis accepted Erdman's subcontract and became bound by it, or instead made a counter-offer that destroyed Erdman's original offer. Otis argues that its acknowledgment letter expressly conditioned Otis's acceptance on Erdman's assent to the different terms contained in the letter, and therefore was a counter-offer. Erdman argues that the effect of Otis's acknowledgement letter is entirely out of the picture because Otis accepted Erdman's offer by starting work well before sending the acknowledgement letter.

Unless the offer says otherwise, "any reasonable manner of acceptance is intended to be regarded as available." *Bio-Tech Pharm., Inc. v. Int'l Bus. Connections, LLC*, 86 Ark. App. 220, 226, 184 S.W.3d 447, 450 (Ark. Ct. App. 2004); ARK. CODE ANN. § 4-2-206(1)(a). As an offer, a

5

purchase order "is binding when those things ordered have been provided…." *Smyth Worldwide Movers, Inc. v. Little Rock Packing Co.*, 235 Ark. 679, 681, 361 S.W.2d 534, 536 (Ark. 1962); *Lee v. Sheller Globe Corp.*, 661 F. Supp. 6, 7 (S.D. Miss. 1986) ("A contract was established by virtue of [buyer]'s purchase order (the offer) and [seller]'s shipment of the ordered goods (the acceptance)."). When a seller "perform[s] under the contract without first securing [the buyer]'s agreement to [the seller]'s requested terms," the seller accepts the terms of the buyer's offer. *Gulf States Util. Co. v. NEI Peeples Elec. Prods., Inc.*, 819 F. Supp. 538, 551 (M.D. La. 1993).

The Court finds that Otis accepted Erdman's offer by beginning performance. When Otis undertook to drill the necessary elevator shaft three days after receiving Erdman's purchase order, it spoke louder with those actions that it did with its acknowledgement letter sent fourteen days after the purchase order. Erdman offered to purchase elevators delivered and installed, and starting the required dirt work three days after Erdman made the offer was, in the circumstances, a reasonable mode of acceptance.[3]

Moreover, it seems unfair for Otis to begin work three days after receiving Erdman's purchase order while maintaining that it was still entitled eleven days later—and after a major problem on the project—to destroy Erdman's offer by counter-offering. "If [Otis] truly had not wanted to be bound under the sales contract without an agreement by [Erdman] to [Otis's terms], it could have protected itself by not providing the [elevators] until it obtained that agreement."

---

[3] Otis's reliance on *White Consol. Indust., Inc. v. McGill Mfg. Co.*, 165 F.3d 1185 (8th Cir. 1999), in its reply is unavailing. Otis analogizes itself to Frigidaire in the *McGill* case. In that case, Frigidaire made a conditional acceptance to which McGill refused assent. When McGill refused assent, the contract transaction "aborted." *Id.* at 1191. Thus, applying UCC § 2-207, the Eighth Circuit analyzed the parties subsequent performance to find the terms necessary to fill out their contract. Otis relies on *McGill* to argue that Otis's "performance of the initial site work does not preclude the application of [§ 2-207]," presumably because Otis's acknowledgment letter was merely a conditional acceptance to which Erdman, like McGill refused assent. (ECF No. 245, at 2). But Otis omits to mention the crucial difference between *McGill* and this case: in *McGill* the original offer and acceptance was destroyed—"aborted," as the Court put it—*before* either party performed. In this case, on the other hand, Otis sent its alleged conditional acceptance eleven days *after* starting to perform in response to Erdman's purchase order. *McGill* therefore does not make Otis's argument.

*Id.* at 551–52 (citing *Diamond Fruit Growers, Inc. v. Krack Corp.*, 794 F.2d 1440, 1445 (9th Cir. 1986)).

Nor is Otis's appeal to course-of-dealing persuasive. Otis claims that, beside the contract in this case, it contracted with Erdman three times between October 2006 and July 2008. Each of those contracts, Otis contends, contained the terms of Otis's acknowledgement letter. A review of the record reveals that Otis's acknowledgment letters in those projects were indeed sent some time after Erdman's purchase orders, just as in this case.[4] Otis does not, however, offer any argument to show why the terms of its acknowledgment letters in those projects became part of the contracts; it merely states that they did. Moreover, Otis does not provide the chronology of those projects for comparison. In other words, there is no evidence that in those projects Otis began work *before* sending its acknowledgement letters, as it did in this case. There is thus insufficient evidence that Erdman and Otis's performance in those other projects was similar enough to this case to give meaning to their performance here.[5]

In sum, because Otis began performing under the terms of Erdman's purchase order well before sending its own acknowledgment letter, that letter came *after* a contract had already been established—and too late to constitute a counter-offer. Because Otis's partial summary judgment motion is premised on the conclusion that Otis's acknowledgment letter was a counter-offer, that motion should be denied.

---

[4] Otis sent an acknowledgement letter on October 2, 2006 in response to an Erdman purchase order dated September 25, 2006. (ECF No. 167-11, at 1; 5). Otis sent an acknowledgment letter on June 29, 2007 in response to an Erdman purchase order dated May 31, 2007. (ECF No. 167-11, at 37; 40). And Otis sent an acknowledgment letter on January 15, 2008 in response to an Erdman purchase order dated November 28, 2007.

[5] Additionally, Otis's alleged conditional acceptance is likely insufficient to meet UCC standards regardless. Otis's letter says that Otis's acceptance of Erdman's purchase order "is conditioned by the following clarifications to its terms," and that Otis's agent "has been granted specific authority only to sign this contract subject to the Otis acknowledgement #...." (ECF Nos. 167-5, at 1; 167-6, at 1). However, "[i]n order to fall within [§ 2-207], it is not enough that an acceptance is expressly conditional on additional or different terms; rather, acceptance must be *expressly* conditional on the offeror's *assent* to those terms." *Dorton v. Collins & Aikman Corp.*, 453 F.2d 1161, 1168 (6th Cir. 1972).

## II.　　Did Otis breach Erdman's insurance and indemnity terms?

Erdman alleges that Otis breached the subcontract between them in two ways: (1) by failing to indemnify Erdman from the Phoenix entities' claims against Erdman; and (2) by failing to pass on the subcontract's insurance and indemnity terms to Otis's own subcontractors, particularly Long's Drilling. Otis argues that Erdman's insurance and indemnity terms never became part of the parties' contract, and that even if they did, Erdman has not shown that Otis was negligent as required by Erdman's indemnity terms.

As the Court has noted, Erdman's indemnity terms apply; Otis's do not. Still, even under Erdman's terms, it has not alleged nearly enough information to entitle it to summary judgment. Erdman fails to support its first theory of breach because it never states what triggered Otis's indemnity obligation. Erdman asserts in bare terms that Otis breached its duty to indemnify, but says nothing to show what, as a factual matter, sprung Otis's obligation.[6]

Erdman fails to support its second theory of breach because it does not state that it suffered any damages caused by Otis's failure to pass on Erdman's indemnity terms. A breach-of-contract action cannot survive without a damages allegation. *Smith v. Eisen*, 97 Ark. App. 130, 139, 245 S.W.3d 160, 168–69 (Ark. Ct. App. 2006). That omission is thus fatal to Erdman's second theory of entitlement to summary judgment.

## CONCLUSION

After Otis and Erdman's partial summary judgment motions, things are unchanged. Otis has not shown by the undisputed material facts that it *did* comply with Erdman's indemnity terms (it has not even alleged that it did), and Erdman has not shown that Otis *did not* comply with them. Therefore, neither party is entitled to summary judgment on Erdman's indemnity

---

[6] Beyond failing to allege any facts triggering Otis's obligation, Otis is right that those facts must reveal negligence, which Erdman has also failed to allege. (ECF No. 167-5, at 4).

claims. Accordingly, the Court finds that Otis's Motion for Partial Summary Judgment (ECF No. 167) and Erdman's Motion for Partial Summary Judgment (ECF No. 177) should be and hereby are **DENIED**.

IT IS SO ORDERED, this 17th day of July, 2013.

/s/ Susan O. Hickey
Susan O. Hickey
United States District Judge