UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

| | | |
|---|---|---|
| ERDMAN COMPANY; and ERDMAN ARCHITECTURE & ENGINEERING COMPANY | | PLAINTIFFS |
| VS. | CASE NO. 2:10-CV-2045 *Lead case* | |
| PHOENIX LAND & ACQUISITION, LLC; PHOENIX HEALTH, LLC | | DEFENDANTS |
| ERDMAN COMPANY; and ERDMAN ARCHITECTURE & ENGINEERING COMPANY | | THIRD PARTY PLAINTIFFS |
| VS. | | |
| DATA TESTING, INC.; OTIS ELEVATOR COMPANY; and | | THIRD PARTY DEFENDANTS |

___

| | | |
|---|---|---|
| PHOENIX HEALTH, LLC; and IPF, LLC | | CONSOLIDATED PLAINTIFFS |
| VS. | CASE NO. 2:11-CV-2067 *Member Case* | |
| ERDMAN ARCHITECTURE & ENGINEERING COMPANY; and OTIS ELEVATOR COMPANY | | CONSOLIDATED DEFENDANTS |

### **ORDER**

Before the Court is Erdman Company ("EC") and Erdman Architecture & Engineering Company's ("EAEC") (together, "Erdman") Motion for Partial Summary Judgment (Fraud and Violations of ADTPA). (ECF No. 173). The Phoenix entities have responded (ECF No. 235), and Erdman has replied. (ECF No. 254). The matter is ripe for the Court's consideration. For the following reasons, the motion will be granted in part and denied in part.

**BACKGROUND**

The facts pertinent to the instant motion are as follows. EC and Phoenix Land & Acquisition contracted for EC to design and build a hospital addition for Phoenix in Fort Smith. The plans were changed as the project went on, and eventually the parties decided to make the building three stories tall instead of one. Data Testing, Inc. was hired to perform a geological survey of the site to a subsurface depth of 25 feet in preparation for installing the elevator.

The elevator eventually chosen required a 34-foot hole—nine feet deeper than Data Testing's survey. When the time came to drill the hole, the driller, Long's Drilling[1] (hired by Otis Elevator, who was hired by Erdman), punched through the roof of an abandoned coal mine no one knew about. The hole caused a great deal of subsidence, which damaged other parts of the project. A large sum of money was spent remediating the subsidence. Phoenix alleges that these rising costs preventing them from maintain financing and completing the project.

EC and Phoenix's contract makes Phoenix responsible for unforeseen expenses caused by "differing site conditions." A differing site condition is a latent feature at the site that materially differs from the conditions anticipated in the parties' contract or from the conditions "ordinarily encountered and generally recognized as inherent in the Work…." (ECF No. 198-1, at 11).

The gist of Phoenix's misrepresentation theory is that Erdman falsely claimed that the mine subsidence was a differing site condition, thereby making Phoenix wrongly believe it bore the expense of remediating the subsidence.

**STANDARD OF REVIEW**

The standard of review for summary judgment is well established. The Federal Rules of Civil Procedure provide that when a party moves for summary judgment:

---

[1] All claims against Long's Drilling have been dismissed. (ECF Nos. 209 & 221).

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a); *Krenik v. County of LeSueur*, 47 F.3d 953 (8th Cir. 1995). The Supreme Court has issued the following guidelines for trial courts to determine whether this standard has been satisfied:

> The inquiry performed is the threshold inquiry of determining whether there is a need for trial—whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). *See also Agristar Leasing v. Farrow*, 826 F.2d 732 (8th Cir. 1987); *Niagara of Wisconsin Paper Corp. v. Paper Indus. Union-Mgmt. Pension Fund*, 800 F.2d 742, 746 (8th Cir. 1986). A fact is material only when its resolution affects the outcome of the case. *Anderson*, 477 U.S. at 248. A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *Id*. at 252.

The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enterprise Bank v. Magna Bank*, 92 F.3d 743, 747 (8th Cir. 1996). The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Id*. The nonmoving party must then demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik*, 47 F.3d at 957. A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial. *Anderson*, 477 U.S. at 256.

## DISCUSSION

Phoenix Health and IPF, LLC have complained against EC for, among other wrongs, fraudulent misrepresentation and violations of the Arkansas Deceptive Trade Practices Act

3

("ADTPA"). (ECF No. 140, at 15-17). Phoenix Land has made the same complaints against EC through a counterclaim. (ECF No. 141, at 12-14). The Phoenix entities allege that EC fraudulently misrepresented several things: (1) the cause and consequent blame for the mine subsidence; (2) information in Change Orders 5, 6, 8, and 9; (3) the relationship between EC and EAEC, the design firm on the project; and (4) "the amount of monies properly due for work completed." (ECF No. 141, at 12). Phoenix alleges that the same conduct also violated the ADTPA.

Now, EC moves for summary judgment on Phoenix's fraud and ADTPA claims for two reasons: (1) the allegations as pleaded do not satisfy Fed. R. Civ. P. 9(b)'s heightened standard for pleading fraud; and (2) Phoenix has not met proof with proof on some of those claims.

I.      **Sufficiency of the pleadings**

Federal Rule of Civil Procedure 9(b) requires a party pleading fraud to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). That means pleading the time, place, content, and source of the fraudulent statements. *Drobnak v. Anderson Corp.*, 561 F.3d 778, 783 (8th Cir. 2009) (citing and quoting cases). Because the pleading standard is higher for fraud claims than for other claims, conclusory allegations are not enough to satisfy Rule 9(b). *Id.* Arkansas courts seem to apply the Rule 9(b) standard to ADTPA claims as well. *See, e.g.*, *In re Humes*, 468 B.R. 346, 357 (Bankr. E.D. Ark. 2011); *Whatley v. Reconstrust Co. NA*, No. 3:10-cv-00242-JLH, 2010 WL 4916372, at *6 (E.D. Ark. Nov. 23, 2010).

The Court finds that several of Phoenix's fraud theories as pleaded fall short of Rule 9(b)'s standard. Phoenix develops only two fraud claims with any particularity: (1) the claim regarding EC's declaration that the subsidence was a "differing site condition"; and (2) the claim regarding EC's direct employment of the EAEC employees who were certifying EC's payment

4

applications (the implication is that there was no real third-party signing off on the work before payment). Phoenix gives several details about those claims, including the nature of the misrepresentation for each. (ECF No. 140, at 15-17). Those claims are therefore sufficiently pleaded.

Phoenix's other fraud claims, however, are bare, vague allegations. No specific information is given about Change Orders 5, 6, 7, or 8 and consequently how any of those Change Orders was false. Nor is any information given about misstatements concerning "the extent and value of the work completed as certified on payment applications" or about "an overstated construction lien." (ECF No. 140, at 17). The most notable missing component of the "who, what, when" requirements here is the "what"—we are told next to nothing about those claims. They therefore fall short of Rule 9(b)'s particularity requirement.

Phoenix argues that its fraud pleadings have already been found sufficient by a previous order of this Court's Fayetteville Division. (ECF No. 235, at 2). That decision, however, touched only on Phoenix's subsidence allegations, which this Court agrees are sufficient. (ECF No. 45, at 3-5). Phoenix's fraud allegations other than those about the subsidence and EC's relationship to EAEC, though, are insufficient and should be dismissed.

## II. Whether Phoenix has met EC's proof with proof

EC challenges Phoenix's fraud proof on the issue of the cause of the subsidence.[2] According to Phoenix, Erdman claimed to have been unable to anticipate the mine collapse, and therefore falsely labeled it a differing site condition. (ECF No. 239, at 3). Phoenix argues that because Erdman *was* able, with due care, to anticipate the collapse, Erdman's claim to have been

---

[2] EC also challenges Phoenix's fraud proof on Change Orders 5, 6, 7, & 8, but the Court has found Phoenix's allegations on that point insufficient as a matter of pleading.

5

unable to anticipate it was false, and Phoenix should not have been financially responsible for fixing it.

However, the deposition testimony of Ed Hickman—the managing member of the Phoenix entities (ECF No. 239, at 2)—denies that Erdman misrepresented the mine collapse:

> Q. What did Erdman do that was false as it relates to its communications to Phoenix about the mine issue?
>
> A. In my opinion, I don't know of anything they did that was false.
>
> Q. I mean, are you going to get up there and say that there's anything in particular that Erdman said to you that was a lie?
>
> A. No.
>
> Q. Or that they somehow deceived you in some way?
>
> A. No.
>
> \*        \*        \*
>
> Q. … So what false representations or omissions did Erdman make that you're aware of regarding the cause of the sinkhole?
>
> A. After it was discovered, I would say none.

(ECF No. 198-4, at 30).

Phoenix attempts to refute that testimony by presenting Mr. Hickman's later declaration by affidavit saying that Michael Krasse, Erdman's construction manager "told me that the mine and subsidence was an unforeseen condition that EC could not have anticipated." (ECF No. 239, at 3). Phoenix also cites the deposition testimony of Dr. Raymond Henn, one of Erdman's experts, saying that a proper geologic survey would have revealed that subsidence was expected and imminent. Finally, Phoenix cites another declaration by Mr. Hickman to the effect that, until hiring a remediation company, he was ignorant of the fact that Erdman had drilled below the 24-foot limit of the existing geological survey. According to Phoenix, the sum of those three pieces

of evidence is that Erdman should have anticipated the subsidence, and that its claim to have been unable to do so was a misrepresentation.

This proof situation—deposition testimony apparently contradicted by a later affidavit—is not unheard of. *City of St. Joseph, Mo. v. Sw. Bell Tel.*, 439 F.3d 468, 475–76 (8th Cir. 2006). Though summary judgment is a drastic thing, *Camfield Tires, Inc. v. Michelin Tire Corp.*, 719 F.2d 1361, 1364 (8th Cir. 1983), it cannot be avoided by one party creating its own issue of material fact. *Id.* at 1364–65. The question comes down to whether the later evidence is a contradiction, or merely clarification or elaboration. An affidavit that contradicts earlier deposition testimony to create a sham issue of fact should not be credited, and summary judgment should therefore be granted over the affidavit's testimony. *Mtn. Pure, LLC v. Bank of Am., N.A.*, 481 F.3d 573, 577 (8th Cir. 2007). If, on the other hand, the affidavit and the deposition testimony are reconcilable—for example, where the affidavit merely adds to the deposition or explains confusion in the deposition testimony—the issue remains for the jury. *Helm Fin. Corp. v. Iowa N. Ry. Co.*, 214 F. Supp. 2d 934, 954–55 (N.D. Iowa 2002).

Bearing in mind its duty to look at this particular issue with extreme care and to articulate its conclusion with equal care, *Camfield Tires*, 719 F.2d at 1365–66, the Court finds that although Mr. Hickman's deposition testimony seems irreconcilable with Phoenix's theory of misrepresentation, and indeed may be, the proof should go to a jury.

Phoenix has long argued that what Erdman said about the subsidence was a misrepresentation. Indeed, it made that allegation in its original counterclaim in May 2010. (ECF No. 15, at 16). Moreover, before Mr. Hickman said in his September 2012 deposition that Erdman did not misrepresent the subsidence issue, he said in the same deposition that from day one he thought Erdman was responsible for the subsidence. (ECF No. 198-4, at 6).

The Court agrees with Erdman that, putting one statement against the other, Mr. Hickman seems to have contradicted himself. But the contradiction does not seem designed to "create sham issues of fact in an effort to defeat summary judgment." *Bass v. City of Sioux Falls*, 232 F.3d 615, 618 (8th Cir. 1999) (quoting *Am. Airlines, Inc. v. KLM Royal Dutch Airlines, Inc.*, 114 F.3d 108, 111 (8th Cir. 1997)). Nor is Mr. Hickman's later affidavit a "sudden and unexplained revision of testimony [that] creates an issue of fact where none existed before." *Id.* (quoting *Wilson v. Westinghouse Elec. Corp.*, 838 F.2d 286, 289 (8th Cir. 1988)).

Because the entire record raises a fact question on Phoenix's misrepresentation theory, and because Mr. Hickman's testimony denying misrepresentation seems more an aberration than a pre-planned about-face, the Court finds that Phoenix's misrepresentation theory should go to a jury.

## CONCLUSION

For the above reasons, the Court finds that Erdman's Motion for Partial Summary Judgment (Fraud and Violations of ADTPA) should be and hereby is **GRANTED IN PART** and **DENIED IN PART**. Phoenix's fraud and ADTPA claims involving Erdman's representations about the subsidence and about the relationship between EC and EAEC have been sufficiently pleaded and contested. Phoenix's fraud and ADTPA claims involving Change Orders 5, 6, 8, & 9, misstated payment applications, and an overstated construction lien, however, are insufficiently pleaded and are therefore **DISMISSED WITHOUT PREJUDICE**.

IT IS SO ORDERED, this 17th day of July, 2013.

/s/ Susan O. Hickey
Susan O. Hickey
United States District Judge